By the Court.—Sedgwick, Ch. J.
The action is brought by plaintiff, as administrator of the estate of Philip Lore, deceased, to set aside a transfer of leasehold property by him in his life-time to defendant Catherine Dierkes, as fraudulent as to the creditors of the intestate. The court found, upon sufficient testimony, that at the time of the transfer, the intestate was indebted to one Philip Baum, in $637, as evidenced by a promissory note payable on demand, and also to one Frederick Luxinger, in $300, which was due. This last indebtedness may be dropped from the case, except as a piece of testimony on the issue of fraud—as the plaintiff admitted upon the trial, that the amount due to Luxinger had been paid since the action was begun, and the judgment could not provide for his being again paid out of the property. The transfer of lease and the term, was to have and hold the same, subject “to the payment of the following-named sums to the persons hereinafter named, at the time and in the manner following, but without any interest thereon ; that is to say, the sum of $636 to Philip Baum, husband of my daughter Elizabeth, and the sum $300 to my son-in-law Frederick Luxinger, in quarterly installments, to each of them respectively, of not less than $75, such payments not to commence or be required until after the lapse of one year after my decease.” As the effect of this transfer was to postpone, for a definite time, the application of the property to the satisfaction of the debts, it was fraudulent as to the creditors, who had a right to *50 an immediate application. The provision that the charges should not carry interest was fraudulent. The finding that the assignment was fraudulent was correct, the judge also finding that the intestate, at the time of the transfer, had no other property than the ^ lease referred to.
This, however, must be confined to indebtedness existing at the time of the transfer. There was no proof that any indebtedness was incurred by the intestate after the transfer, and no proof was given of any intent to defraud subsequent creditors if there had been any.
Before the transfer, the intestate had made a bond, evidently intended at the time, to be for the benefit of the creditors that have been named, and also, to secure the bond, a mortgage upon the leasehold after-wards assigned. One of the mortgagees was the defendant Catherine Dierkes, to whom the intestate was indebted in the sum of $1,800. If this had been an effectual security for the indebtedness due to Philip Baum, it would make a serious question as to the fraudulent character of the transfer in this action. In fact, however, Philip Baum was not secured, as the bond and mortgage were to Elizabeth his wife. Catherine Dierkes claimed under the transfer to her, and not under the mortgage. Contemporaneously with the transfer, the intestate made a declaration, that the mortgage had been made by mistake and had never been delivered, although it had been recorded, and he declared that he therefore canceled it. There is nothing connected with the mortgage that tends to show that the transfer in question was not fraudulent.
The next question concerns the amount or quantity of the recovery ; that is, the judgment that was recovered. It adjudged that the premises be sold by a receiver, and that, from the proceeds, after specified deductions of expenses and costs, the receiver “pay *51 to the defendants the sum of $1,800, with interest, and the further sum of $500, with interest, and that said receiver pay the balance of all moneys remaining in his hands, to the administrators who may be appointed by the surrogate of the estate of Philip Lore, hereafter to be appointed.” Specific attention will be given to the provision as to $500. The plaintiff has received letters of administration, but the surrogate had ordered, the ‘‘ authority of the within named administrator is hereby limited, so that while allowed to prosecute the action brought by him in the superior court, he is forbidden to receive the avails of any judgment he may recover therein.”
From this judgment both parties appeal. The plaintiff objects to it, that as he requested the judge to direct judgment that plaintiff have an accounting of all rents and profits, and tha t plaintiff recover all rents collected by the defendants, and excepted to the refusal to direct such a judgment, it should be modified in the respects adverted to. I am of opinion that the plaintiff was not entitled to an account of the rents received by the defendant, at any earlier date, at least, .than that of the disaffirmance of the transfer, or to a recovery of their amount. The request was therefore, incorrect, in part at least, and the judge was justified in not acceding to it. It was not, futhermore, necessary to the satisfaction of any indebtedness of the intestate, that resort should be had to the rents. The property in question had a value of at least $5,000, to be applied to debts, that were not nearly so great in the aggregate, so far as the evidence disclosed, and any provision as to accounting for rents should have been conditioned that the proceeds of the property were not sufficient to pay the claims.
The plaintiff further urges that the provision for payment to the defendant of the sums of $1,800, and $500, was erroneous, on the ground that the defend *52 ant can take no benefit or keep any indemnity, through the operation of an instrument that is fraudulent, she having notice of its character. At any rate, it seems to be clear that she can get no benefit through the operation of the instrument as such, whether she took with notice or not. The judgment gives her priority, as to the $1,800, out of the proceeds. Apart from the transfer to. her, which is void because fraudulent, she was a general unpreferred creditor, entitled only to a footing with other creditors. Her claim to a preference, then, can only rest upon the operation of the transfer. As this is void, the claim must fall. But as a creditor, she is entitled to her share of the estate, in the course of administration, as much as any other creditor. This does not come through the impeached transfer. It would exist, if there were no transfer.
In view of the case of Davis v. Leopold (87 N. Y. 620),* it is necessary, in order to consider properly the claim to be paid the $500 out of the proceeds, before payment to the plaintiff, to ascertain, if within the meaning of that case, she was guilty of participation in the fraud, in such a sense as to deprive her of her right to be indemnified for money paid on the mortgage subject to which she took the conveyance. On the findings and the whole case, it appears, that Catherine Dierkes had not an actual intent to defraud creditors in any other sense, than that an intent to defraud must be charged upon her, because of a presumption that she knew the law and was chargeable with intending the consequences of the assignment, even if she had neither of these matters in her mind. Her guilt was constructive rather than actual. In such case, it would not be inequitable or illegal to allow her for an amount of money which she paid on *53 an existing mortgage, and which payment increased the value of the equity of redemption in a peculiar way. If she had bought the mortgage she could have enforced it, and equity can consider her as entitled to an interest in the mortgage corresponding to the amount she paid upon it. In this regard, her claim is superior to that of the plaintiff, who represents creditors.
The defendant objects to the judgment, that it is erroneous in directing that the surplus of proceeds be paid generally and finally to the administrator who may be appointed by the surrogate. In my judgment, the objection is valid. The cause of action is of the kind described by chapter 314, Laws of 1858 (4 Edm. St. 483). The first section provides, that any executor, administrator, &c., may for the benefit of creditors or others interested in the estate, disaffirm, treat as void and resist all acts done, transfers, etc., made in fraud of the rights of any creditor, including themselves and others, interested in any estate or property held by or of right belonging to any such trustee or estate, etc. As upon the disaffirmance of the transfer, the property would be in the transferer, the section would imply, that the trustee could recover it. It is doubtful whether such a cause of action is the one intended by the second section, which provides that every person who shall in fraud of the rights of creditors and others have received, taken, or in any manner interfered with, the estate, property, or effects of any deceased or insolvent association, corporation, partnership or individual, shall be liable in the proper action to the executor, etc., or other trustees of such estate or property, for the same, or the value of any property or effects so received or taken, and for all damages caused by such acts to any such trust estate. The absence of words that would indicate a reference to the first section, together with the characteristics of *54 the conditions described by the second section, suggest that the second section in the case of executors and administrators refers not to property that has been transferred by a person in his life-time, but to property taken or received after the decease. For the purposes of the point in view, it will not be necessary to determine whether the two sections have different aspects.
The counsel for the plaintiff insists, that the transfer may be disaffirmed for the benefit of others than creditors; viz., such as are interested in the estate, like heirs or distributees. This, however, is not of so much importance as is the thing that may be dis-affirmed. The administrator can disaffirm only transfers made in fraud of creditors and others interested in the estate or property. The proposition does not need discussion that an instrument which transfers the whole property of a person to one of those who are his next of kin, and would upon his death become his heirs or distributees, to the exclusion of the rest, is not a fraud upon them. The transferer has no obligation to any of his next of kin, in such a matter. Although the instrument may be fraudulent as to creditors, the next of kin, or their representative, cannot avoid it. The representative of the next of kin, or rather the administrator, avoids it in behalf of creditors. Such an avoidance cannot result in favor of those for whom it cannot be avoided, but against whom it is vested. I therefore think that the judgment was erroneous, in so far as it did not limit the application of the proceeds of sale to the claims of creditors.
In my opinion, there should have been made in the judgment, provision, that after the payment of claims of creditors, the surplus should go to the fraudulent assignee. This would be the result of recognizing that a fraudulent transfer is valid between the parties to it, although it may be avoided by parties defrauded *55 by it. The case of Bostwick v. Menck (40 N. Y. 383),* declares this as to a plaintiff, a receiver, in supplementary proceedings, representing creditors, in the kind of way that the present plaintiff represents them. It was there said : “It is clear that the right of the receiver representing creditors and acting in their behalf, is no greater than that of the creditors. What then are the legal and equitable rights of a creditor as to property fraudulently transferred ? Manifestly, only to treat as void and set aside such transfe/, so far as shall be necessary to satisfy his debts and costs. He has no right to interfere with the transfer beyond this. When his debt and costs are paid, the transfer is as valid as to him, as to other persons.” It was held that the plaintiff was only entitled to judgment for the amount of the judgment upon which he had been appointed receiver, and certain expenses.
In Bostwiek v. Menck, the plaintiff did not represent all the creditors of the fraudulent assignor, in solido. He represented only those, in whose behalf he had been appointed. The plaintiff in this case represents them all, to a certain extent. Some of them, may be at present unknown. In such a suit as this, the plaintiff must show that there were in fact creditors, although it may not be necessary to show that he has proved who were all the creditors. A creditor’s bill presents an analogous case. The court can use due measures to protect unknown creditors, while it also uses due measures to provide for the contingency of there being no other creditors than such as have appeared and proved their claims.† Thompson v. Brown (4 Johns. Ch. 619), specifies the different cases, in which unknown creditors have been called into pro *56 ceedings in suits essentially like this action, and such creditors as have not appeared and proved their claims, have been bound by the adjudication. The case referred to is, with others of a similar kind, cited in Kerr v. Blodgett (48 N. Y. 62).* This last case shows that the person bound to distribute funds among all creditors, will be protected by a judicial accounting against the claims of creditors, who are not known to the trustee to claim to be creditors, and who have omitted, without fault on their part, to prove their claims in the proceedings.
The fact, that to entitle creditors to a distributive share in the estate, it is enough if they present their claims within six months from the first publication of notice to present claims, has not been lost sight of. If necessary, it would be appropriate to consider whether they might not be bound, for the purposes of this action, by a notice of less than six months. This necessity may be avoided by making the notice to be such as the administrator shall give as required by law,† requiring him to present in this action, claims presented to him under the notice, and to prove them, or to notify the claimants of these proceedings, and requiring them to present and prove their claims, before the referee who must be appointed in the judgment. It will be noticed that this provides for the contingency of the administrator’s notice having been published for six months before the judgment is entered.‡
The referee should not allow, as claims upon the proceeds, any that are founded upon indebtedness that *57 arose after the fraudulent transfer. Such part of the fund as is for the benefit of creditors, should be paid by the receiver into the hands of the administrator, who should pay it, pro rata¿ to the creditors who would be entitled, under the judgment. It may happen that every creditor of the estate is not, for that reason, entitled to a part of the fund. Some may have ratified the assignment, for instance, by receiving a benefit under it. John Luxinger would be such a case, if he received from Catherine Dierkes the indebtedness to him, subject to which the assignment was made to her. The judgment should further provide that the surplus be paid to the defendant Catherine Dierkes.
Ho reason has been assigned why the motion to dismiss the complaint against John Dierkes, husband of Catherine Dierkes, should not have been granted. The action concerned the wife’s separate property, and she might have been sole defendant. The husband had no interest in the property, or obligation in respect of it, or the defense of the action. Ho claim was proved against him. His admission in the answer, was only that during the intestate’s life-time, for some time, he, defendant John Dierkes, lived in a part of the premises with him.
The motion should have been granted, with costs.
One other matter calls for attention. The fraudulent assignment was made subject “ to the payment of the further sum of $500 to my son John Lore, to be made in such sums, from time to time, after the lapse of one year after my death, as said Catherine Dierkes in her discretion, shall deem necessary, proper or advisable ; which said last three named sums the said Catherine Dierkes hereby assumes and covenants to pay, as aforesaid, as part of the consideration herein-before expressed.’’ It may be assumed that the plaintiff was not entitled to have the instrument set aside *58 as against John Lore, without making him a party This objection was not made in the answer or upon the trial, or in any way to the court below, so far as the case discloses. It is made on this appeal for the first time, and, therefore, should not be sustained for the benefit of the defendants. But the judgment will not bind John Lore of his representatives. The judgment should declare, on its face, that it is made subject to the rights of Lore, and the sale should be made subject to those rights.
The facts of the case intimate that it would be proper to add to the judgment a provision that defendant Catherine Dierkes might purchase the claims of creditors and succeed to their interests in the fund.
If there were no other evidence of fraud, it would be sufficient to modify the judgment as is indicated in the opinion, and, as so modified, affirm the judgment. It appears, however, that the complaint alleged that the assignment of the lease was obtained by undue influence and fraud. On the trial, the plaintiff offered to prove that the assignment of the lease was “ made under undue influence on the part of the defendants with the deceased.” This was objected to by the defendants, and the objection was sustained. Plaintiff requested the court to find that such assignment was procured by the defendant, Catherine Dierkes, from the deceased, by undue influence, while he had not full liberty of his actions. The court refused so to find. The statute provides that any executor may, for the benefit of creditors, or others interested in the estate, or property so held in trust, disaffirm, etc., all acts done, transfers and agreements made in fraud of the rights of any creditor, including themselves and others interested, in any estate or property held by, or of right belonging to any such trustee or estate. If, therefore, this assignment was obtained by undue influence, it would not be binding on the assignor, and *59 could be disaffirmed as to him. The property would therefore, by right, belong to the estate. If the assignment was not his voluntary act, and, at least, if he or others competent to represent him disaffirmed it, the property it referred to would remain in him, and it could be recovered from the assignee, by the assignor’s administrator. A recovery in such case would be for the benefit of the distributees, as well as of creditors. In that case John Lore would be a necessary party.
Note on the Rights of Transferees and others under Conveyances in Fraud of Creditors or of Trusts.
The following cases illustrate the somewhat obscure, and not fully settled principles on which the courts are accustomed to deal with the claims of those whose interests are involved in transfers set aside as fraudulent.
The cases, it will be seen, are not all reconcilable with each other, or with sound principles of equity.
A part of the apparent incongruity will disappear if the reader bears distinctly in mind the essential difference in the position of the three great "classes of co-defendants in these actions.
1. Bona fide purchasers for value or supposed value, without notice.
If the plaintiff desire to try such issues, he should have the opportunity, and the judgment should be reversed and a new trial ordered, with costs to the defendant Catherine Dierkes. If, however, the plaintiff does not insist on that right, the judgment should be modified as directed by this opinion, and, as modified, affirmed, without costs to either party on this appeal. The order is to be settled by the chief judge, on notice to all the parties to the action.
Ingraham, J., concurred.
2. Transferees who have not parted with value, but yet are not chargeable with notice or bad faith.
3. Transferees who were privy to the fraud.
I. Charging grantee with rents and profits.
Sands v. Codwise (a well considered case. 1808), 4 Johns. 536.
Creditor’s bill to set aside conveyances, &c.
Land belonging to the debtor was conveyed, part directly and part through a third person, to his son. Some notes were given by the son in payment, but most, if not all of them remained under the father’s control. The son was a party to the fraud. The debtor was adjudged a bankrupt, and an assignee was appointed, but the assignee having refused to bring an action, creditors filed this bill to set aside the conveyances.
Held, on the ground of absolute fraud, that the deeds were void for all purposes ah initio. A court of chancery will not allow a deed to stand for the reimbursement or indemnity of a partieeps criminis, in a case of positive fraud.
The court then modified the decree below by only charging the defendants with the rents and profits received since the debtor’s bankruptcy, saying that the right of creditors cannot be extended beyond that time, because their title as creditors to an account only accrued then, and that chancery never decrees an account of rents and profits but from the time that the complainant’s right accrued. Sands ®. Codwise, 4 Johns. 536.
Backhouse v. Jett (a well considered case, opinion by Marshall, Ch. J., 1821), 1 Brock. 500.
Bill in equity against administrator to reach assets.
The decedent before his death conveyed to his son, the defendant, who was afterwards his administrator, the property in controversy, which consisted of slaves. The conveyance was fraudulent as to creditors, but there was no bad faith on the defendant’s part. The commissioner charged him with the value of the slaves with interest.
Held, that although, where a person having no title, holds-another’s property, the profits belong to that other, yet where a grantee has title as against all, except his grantor’s creditors, he is entitled to the profits up to the time of bringing the suit, as the creditors have no title to the property, but only a right to have their debts satisfied out of it. Where a title is not to the thing itself, but to have it sold in satisfaction of debt, this gives no right to profits previously made by a hona fide possessor. Backhouse v. Jett, 1 Brock. 500.
Gillette v. Bate, 10 Abb. N. C. 88.
Creditor’s action to reach stock received by the debtor’s wife in exchange for patents assigned to her by a transfer, void as against creditors.
The court found that, at the time of the transfer, the patent was of no value for want of utility and novelty, and it was contended that as it appeared that present value of the stock issued in exchange was attributable to the company’s purchase of other patents, such stock could not be subjected to the judgment; but the court- held otherwise.
The fraudulent grantee having taken stock in a corporation in exchange for the subject of the fraudulent conveyance, the incidental advantage, resulting from appreciation of its value by the corporate management, accrued to the creditors of the grantor.
Held further, that the stock should not be relieved in any degree from creditors’ claims by reason of the fact that the unpatented inventions also transferred were not property and could not be reached by creditors, no separate valuation being put upon them, nor any evidence adduced to show that they were of any value. Gillette v. Bate, 10 Abb. N. C. 88.
Kipp v. Hanna, 2 Bland, 26 (1829).
Bill by trustees of debtor in insolvency proceedings, to set aside conveyance to wife and children.
The court, after having held the conveyance, which was voluntary, to have been in fraud of creditors, held incidentally, that as a necessary consequence of its being void as to creditors represented by the plaintiffs, the property had been wrongfully withheld from the time the debtor applied for the benefit of the insolvency laws, at which time his property became vested in plaintiffs ; and the land should then have been delivered to them. Decreed, therefore, that defendants account for rents, &c., from that time to time of sale for debts, or of delivery of property to plaintiffs. Kipp v. Hanna, 2 Bland, 26.
Blow v. Maynard (a well considered case, 1830), 2 Leigh, 29.
Creditor’s bill to set aside conveyances, &c.
Plaintiff was a creditor on a bond of the debtor, but his debt had not been put in judgment, and the bill was filed against the debtor’s heirs and alienee, he being dead. His alienee was a trustee for the widow and children. The widow occupied the house. The court below charged her with 3-3 of the rents and profits (1-3 being deducted on account of her dower), with interest from the time of the debtor’s death.
Held, error.
Until a creditor has a judgment, he has no lien on the land of Ins debtor, and is not entitled to its possession. It is wrong, therefore, to charge a grantee with profits received before the decree, and even if it were right to give profits it would be wrong to give interest on them. Decree reversed. Blow v. Maynard, 2 Leigh, 29.
In the same case, however, in regard to a fraudulent conveyance of personal property, the court (without much discussion of the question) held the defendants liable for the profits, on the ground that they were accountable in the same manner as a rightful executor would be. It appeared that the debtor remained in possession of the property until his death, notwithstanding the transfer ; and the defendants were charged with the profits from the time of his death.
Bean v. Smith (Story, J.), 2 Mas. Circ. Ct. 252.
Creditor’s bill to set aside conveyances as fraudulent.
Held, that where a deed is obtained under suspicious or inequitable circumstances, or is only constructively fraudulent, it may stand as security for the purpose of reimbursement or indemnity, but it is otherwise where it is fraudulent in fact. The court then held the conveyance in question to be actually fraudulent and refused to allow it to stand as security for any advances subsequently made or any debts then due (these constituting the consideration for the conveyance)
' The plaintiff’s debt was then decreed to be a charge upon the land and upon the profits received since the conveyance. Bean v. Smith, 2 Mas. Circ. Ct. 252.
Robinson v. Stewart, 10 N. Y. 189.
Creditor’s bill to set aside a conveyance by a debtor to his son upon inadequate consideration, part of the consideration being also the support of the grantor. It was objected that- the court below had not charged the defendant with the amount of the rents and profits
Meld, that the the remedy of a creditor having no lien, is to have the land sold and the proceeds applied towards his debt. Until such sale, or, at least, until a conveyance to a receiver, there is no principle upon which a grantee can be held to account to creditors for rents and profits. If the land had been sold on execution against the grantor, the creditors would have had no right to the rents and profits, until the conveyance by the sheriff. Robinson v. Stewart, 10 N. Y. 189.
II. Charging grantee with interest; profits on re-sale.
Steere v. Hoagland, 50 Ill. 377 (a well considered case, 1869).
Where a buyer, without fraudulent intent, had bought goods at a sale fraudulent in law as to the seller’s creditors, and added new purchases from time to time to keep up the stock, and after the lots had become so intermingled that it could not be known at what prices they were respectively sold, a creditor of the original seller filed his bill to subject the proceeds to the satisfaction of his debt.&emdash;Held, that the rule which should govern in taking the account was to charge the defendant with the actual value of the goods, at the time of the transfer, with interest to the time when the buyer had paid some of the debts of his seller according to an understanding between them at the time of the sale, and upon any balance remaining in the buyer’s hands until the final decree; and a decree which charged the defendants with a profit on the old stock equal to the average profit on the mixed stock was therefore reversed. Steere v. Hoagland, 50 111. 377.
III. Protecting grantee as to a mistalce in valuation.
Goldsmith v. Hapgood, 1 Holmes, 454 (1875).
Suit by assignees in bankruptcy to compel conveyance. Decree in favor of plaintiffs.
Held, that an assignee in bankruptcy cannot maintain a suit in equity to recover real estate purchased in good faith by the defendant for a nominal consideration (it then having no market value), within a month before the proceedings in bankruptcy, from the bankrupt’s assignees in insolvency, appointed several years before, under the insolvency law of Massachusetts, although the property has since turned out to be more valuable than was supposed, because an incumbrance upon it which rendered it practically worthless, was subsequently found to be invalid. Decree reversed and bill dismissed. Goldsmith v. Hapgood, 1 Holmes, 454.
IV. Protecting grantee as to improvements made hy Mm.
King v. Wilcox, 11 Paige, 589.
Creditor’s bill by creditor, against debtor and his grantee, to set aside conveyance.
The conveyance was actually fraudulent and void, even as against subsequent creditors, of whom plaintiff was one. Whether the grantee was implicated in the fraud does not seem to have been discussed. The property was subject to mortgages which the grantee paid and took assignments of. He also made improvements. The vice chancellor allowed him for the mortgages, refused to allow him for the improvements, and directed him to account for the rents and profits.
Held, on appeal, that as the complainants had but a lien on the premises, and as the improvements had enhanced its value, it was but equitable that the defendant should be allowed for them, and that he should not be charged with the profits arising from them.
Decree modified so as to allow the defendant for the amount due - on the mortgages, for the increase in value of the premises caused by the improvements, and so as not to charge him with profits which arose exclusively from the improvements. King v. Wilcox, 11 Paige, 589.
Strike v. McDonald (a well contested case, 1828), 2 Harris & G. 191.
Creditor’s bill, to set aside conveyance, &c.
The court below set aside the conveyance, charged the grantee with rents and profits, and refused to allow him for improvements. The grantee had at the time of the conveyance actual knowledge of its fraud.
On appeal, held, that whosoever comes into possession by fraud, must account for rents and profits, when the fraudulent conveyance is set aside. When a man has acted fraudulently, and while conscious of the defect in his title, spends money on improvements, he cannot avail himself of it. Decree affirmed. Strike v. McDonald, 2 H & G. 191.
Shand v. Hanley, 71 N. Y. 319.
Creditor’s action to set aside conveyances, &c.
A debtor conveyed through a third person to his wife, who, after the filing of a lis pendens in an action in which an attachment was issued upon the ground that the conveyance was fraudulent, made improvements upon the premises conveyed.
It was held that she was affected with constructive notice of the defect in. her title, and could not claim the benefit of the subsequent improvements, at least where it would defeat the claim of the creditor. Shand v. Hanley, 71 N. Y. 319.
V. Indemnifying grantee for paying off ineumb'ances.
Mead v. Combs, 4 C. E. Green (N. J.) 112 (1868).
Bill in equity by creditors to redeem from a mortgage, and to have a conveyance of the equity of redemption set aside.
The consideration of the conveyance was the grantee’s assuming the mortgage. The chancellor set aside the deed as fraudulent as to creditors, and directed that the grantee be credited with what he had paid on the mortgage, with interest, and that rents and profits be set off against the money due to him on account of the mortgage. (This was a secondary point, not much discussed.) Mead v. Combs, 4 C. E. Green, 112.
Davis v. Leopold, 87 N. Y. 620; S. C., 13 Weekly Dig. 837; rev’g 10 Id. 266.
Creditor’s action to set aside conveyances, &c.
A debtor and his wife, in fraud of creditors, conveyed premises subject to a mortgage, and the grantee reconveyed to the wife, who assumed payment of the mortgage. Held, the wife being a guilty participant in the fraud, that she was not entitled to protection for the sum paid her grantor, or the liability assumed.
A deed fraudulent, in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity.
Annin v. Annin, 24 N. J. Eg. 185 (a well considered case, 1873).
Bill in equity to have judgment satisfied out of property conveyed to debtor’s wife.
Held, that a voluntary conveyance by a husband to his wife, is void as against creditors of the husband whose debts existed at the time of the conveyance.
General allegations that she had spent large sums of her own money in paying off mortgages on the property and improving it, do not entitle her to an estoppel against an antecedent creditor of her husband, who was kept in ignorance of the conveyance, when it does not appear what she had received from the property or that she had spent more than was received. Even the lapse of seven years under these circumstances would .not create an estoppel.
The property was ordered sold, and debts to be paid from proceeds. Annin v. Annin, 24 N. J. Eq. 185.
Potter v. Gracie, 58 Ala. 303; S. C., 29 Am. R. 748, 753 (1877).
Bill in equity by creditors to set aside a deed.
The court, after holding the deed void as to creditors, allowed it to stand as security for money advanced by the grantee in paying oS an incumbrance, saying that while in law an instrument avoided for fraud or illegality becomes a nullity, in equity it may stand as security for advances made or liabilities incurred in consequence of it, if, under the circumstances, it would be just that it should.
The conveyance not being tainted with actual intent to defraud creditors, but being void because voluntary, the equity of creditors is to the premises in the condition in which they were conveyed; and they have no claim to avail themselves of the removal of incumbrances by the grantee. Thus the grantee was allowed for money expended in paying oñ a mortgage, and for taxes and insurance paid after filing the bill, but was charged for use and occupation from the filing of the bill until the sale of the premises. Potter v. Gracie, 58 Ala. 303; S. C., 29 Am. R. 748, 753.
Smith v. Grimes, 43 Iowa, 356 (1876).
Where the consideration for a conveyance held to be fraudulent was a certain sum in money and the discharge of certain incumbrances,— Held, that the fraud in the conveyance did not vitiate the assignment of the liens to the grantee, but that they were valid in bus favor. Smith v. Grimes, 43 Iowa, 356.
Croft v. Arthur, 3 Desau. 223 (1811).
'Creditor’s bill to set aside a deed made by a debtor to the executor of the estate of his wife’s former husband, and which was fraudulent as to creditors. Held, that it might be allowed to stand as security for any debt which might be due to the estate.
One of the defendants being innocent of the fraud, and the property having come into his hands as the representative of minors under an apparently legal title which he was bound to protect, and the creditors not having been diligent, it was decreed that in his account of the rents and profits he be allowed his expenditures on account of the minor, and for improvement and safe keeping of the property, and also commissions. (Secondary point, and not much discussed.) Croft v. Arthur, 3 Desau. 223.
VI. liepaying the consideration.
How v. Camp, Walk. Ch. 427 (1844).
On a creditor’s bill showing a case of positive fraud, in which the grantee participated, the court charged him, upon setting aside the conveyance, with the amount of purchase money and interest of a portion of the property sold under a mortgage, and also with the rents and profits; credited him with taxes paid and improvements; but refused to credit him with money paid to the grantor, unless the money was applied by the grantor before the commencement of the suit to pay debts due at the time of the conveyance. (Secondary point.) How v. Camp, Walk. Ch. 427.
Wood v. Goff, 7 Bush (Ky.) 59.
A grantor conveyed all his estate, after reserving a life interest, in consideration of a life interest in a slave. This deed was held fraudulent as to creditors, there being actual fraud on the grantor’s part and only constructive fraud on the grantee’s. The court below allowed the grantee’s successor for the hire of the slave, for the number of years that the grantor lived, and charged them with the profits of the land.
On appeal, held that although a deed fraudulent in fact cannot stand even as indemnity, yet where, as to the grantee, it is only constructively fraudulent, it may be upheld to the extent of securing restitution of the amount of the actual consideration given or paid by him.
The court accordingly modified the decree below by crediting the defendants with the value of the life estate in the slave instead of the value of the services he had rendered. Wood v. Goff, 7 Bush (Ky.) 59. See also Van Wyck v. Baker, 16 Hun, 168.
Hartfield v. Simmons, 12 Heisk. (Tenn.) 253 (1873).
Creditor’s bill to impeach, as fraudulent, a conveyance of land made by a son to his mother, for a grossly inadequate consideration, and under other suspicious circumstances. Seld, that the amount of the consideration might be, nevertheless, allowed as a lien upon the land, which was thereupon decreed to be sold subject to such lien, in satisfaction of the creditor’s claim. Hartfield v. Simmons, 12 Heisk. (Tenn.) 253.
Boyd v. Dunlap, 1 Johns. Ch. 478.
Creditor’s bill to set aside conveyances, &c„
Where a deed is sought to be set aside as voluntary, and fraudulent against creditors, and there is not sufficient evidence of fraud to induce the court to avoid it absolutely, but suspicious circumstances as to the adequacy of the consideration, and fairness of the transaction, the court will not set aside the conveyance altogether, but permit it to stand as security for the sum actually paid.
The plaintiff was a purchaser at a sheriff’s sale, under a judgment, and the court gave the defendant his election to pay the judgment, interest and costs, and take a conveyance from the plaintiff; or, in default, to deliver up the deed to be canceled, on receiving from the plaintiff the sum actually advanced by the defendant. Boyd v. Dunlap, 1 Johns. Ch. 478.
Chapman v. Ransom, 44 Iowa, 377 (1876).
If the intent of the assignment of a contract is to defraud the creditors of the assignor, the assignee can take nothing thereby, and is not entitled, as against the creditors, to withhold from the proceeds of the execution of the contract the amount he may have paid for the assignment. Chapman v. Ransom, 44 Iowa, 377.
VII. Allowing the grantee for paying other debts of the debtor.
Brown v. McDonald, 1 Hill Ch. 297 (1839).
Bill in equity by creditors to set aside conveyances and for an account.
The debtor conveyed land to his mother, she paying a valuable consideration which was applied towards the payment of his debts; and it was also agreed that he should keep possession and that the land should go to his children.
Held, that although the conveyance was legally fraudulent, yet as it did not appear that the grantee intended any actual fraud, the parties were entitled to be put in statuo quo. As the consideration money was applied to debts, the creditors could not complain. The deed must stand as security for its being refunded, but without interest until the title is divested; and the defendant must account for profits. Brown v. McDonald, 1 Hill Ch. 297.
Robinson v. Stewart, 10 N. Y. 189 (a well considered case, 1854).
Creditor’s bill. A debtor conveyed all his property to his son in consideration of an unliquidated indebtedness, the son agreeing orally to pay certain debts and to provide for the debtor and his wife’s support during life. No provision was made for the plaintiff's claim, which was then contingent and not due. The consideration was inadequate. The court set the conveyance aside, but held that the defendant was entitled to share pro rata with the other creditors, and to be subrogated to any debts of the debtor paid by him.
This is not a case of a conveyance standing as security. Equity requires the fund arising from the sale of the land to be distributed pro rata. It is entirely equitable that the defendant should be substituted in place of the creditors whose debts he paid, as the conveyance was valid between the parties. It having been set aside by the creditors and pronounced void from the beginning, it cannot act to extinguish the defendant’s claims. Robinson v. Stewart, 10 N. Y. 189.
The last case was distinguished in Union Nat. Bank v. Warner, 12 Hun, 306.
Creditor’s action to set aside conveyance, &c.
It appeared that the debtor had conveyed land to his sons, the defendants, with intent to defraud creditors, and that the sons accepted the conveyance with knowledge of that intent.
Held, that the conveyance was not rendered valid by the fact that the sons therein assumed and agreed to pay certain of their father’s debts, and they could claim nothing under it, either to their own advantage or to the advantage of any one else. Union Nat. Bank v. Warner, 12 Hun, 306.
Steere v. Hoagland, 50 Ill. 377 (1869).
Bill to subject proceeds of goods, the transfer of which was in law fraudulent as to creditors, to the payment of debt.
It appearing that the purchaser, previously to being notified of the filing of the creditor’s bill, had given his own notes and acceptances to other bona fide creditors of his vendor, which were received in full payment of their debts,—Held, that he should receive credit therefor as if he had already paid the money. Steerey. Hoagland, 50 111. 377.
A different result was reached in,&emdash;
Hubbard ®. Allen, 59 Ala. 283 (Opinion by Beiokell, Oh. J.).
A creditor filed a bill to set aside as fraudulent a deed of bargain and sale to a son-in-law, stating an adequate pecuniary consideration, and made long after the debt was incurred. It appeared that the consideration relied on was an alleged indebtedness to the grantor’s daughter, the son-in-law’s wife, which was fictitious. The daughter and her husband filed a cross-bill to apply the property to debts due the son-in-law, as well as to the alleged debts to the daughter, in case the deed should be set aside.
Held, that the prayer of the cross-bill could not be sustained. Brickell, J., says:
“ Hubbard [the son-in-law] has accepted a deed expressing an actual moneyed consideration, and lias failed to prove that the consideration was real. The deed is void as to creditors&emdash;it conferred on him no title. The law condemns as wrongful its acceptance, and condemns the possession derived under it. His duty was to reconvey it to the insolvent debtor; failing in that duty he is regarded as a trustee in iivoitum. holding for the benefit of creditors. It would encourage, not suppress fraud, if he were permitted, when the conveyance fails, to retain the property in satisfaction of demands, however just, the grantor may be liable for to him, and which were subsequently-acquired, forming no part of the consideration of the deed. Indirectly, effect would be given to the conveyance the statute of frauds denounces as void. There may be cases of purely voluntary conveyances in which the donee is innocent of either constructive or actual fraud, and a court or equity would protect his possession until any just debt he had against the donor was satisfied; or would so mould a decree granting relief to other creditors, as to require payment to him. or placing him on an equality with them. Bump on Fraud. Cono. 596. Or an innocent donee may remove incumbrances, and he will be entitled to indemnity, if the conveyance is set aside at the instance of creditors. Potter®. Grade, 58 Ala. 303. Hubbard does not stand as an innocent donee, claiming under a purely voluntary conveyance. The deed is of bargain and sale, purporting to be founded on a pecuniary consideration. There is no principle upon which the deed can stand as security to him from the grantor. Tainted with actual fraud, it must be set aside altogether. Bump on Fraud. Com. 597 ; Marriott v. Givens, 8 Ala. 694 ; Wiley o. Knight, 27 Ala. 336. There are other cases in which a grantee or vendee will be protected by a court of equity, though at law the conveyance would, be wholly condemned. The particular circumstances of the case may justify a court of equity in allowing the conveyance to stand as security for the amount the donee or vendee may have advanced on the faith of it, or it may compel a vendee, when he has purchased at an inadequate price, to pay tire difference between the price and the actual value—or may permit it to stand as a security for the debt, really due, if it was intended as a security for or payment of such debt, when right and justice require it. Clements v. Moore, 6 Wall. 299; Price v. Masterson, 35 Ala. 483. But a party claiming under a conveyance which is actually fraudulent because made without a valuable consideration, while expressing that consideration, and fails entirely to sustain the consideration,—has no equity to claim the retention of the property, either as security or in payment of independent and distinct demands against the vendor or grantor. As to creditors, he has acquired the property tortiously, and stands in the same attitude he would stand in towards the grantor or vendor if he had taken possession by an alienated trespass, the conveyance under which he derives title and possession is void, not warranting the possession.”
VIII. Bower of wife who joined in the conveyance set aside.
Malony v. Horan, 12 Abb. Pr. N. S. 289; S. C., 49 N. Y. 111 (a well considered case).
Action for dower.
Plaintiff joined with her husband in a conveyance containing release of dower in the usual form, and the grantee shortly after conveyed the premises to the plaintiff. Subsequently, in a receiver’s action in which the plaintiff and her husband and their grantee were defendants, the conveyances mentioned were declared void as to the husband’s creditors, and pursuant to decree wore sold—and the purchaser assigned his bid to the defendant.
Held, on appeal, that plaintiff was entitled to dower in the lauds conveyed. As the release of an inchoate right of dower whith a married woman makes by joining in a conveyance with her husband, operates against her only by estoppel, which must be reciprocal and binds only those who are privy thereto, the plaintiff’s release of dower was available only to one who claimed under that title which was created by the conveyance with which the release was joined. Maloney v. Horan, 12 Abb. Pr. N. S. 289; S. C., 49 N. Y. 111; rev’g 53 Barb. 29.
Followed in 1861, in Hammond v. Pennock, 61 N. Y. 145; aff’g 5 Lans. 358.
Compare Manhattan Co. v. Evertson, 6 Paige, 457; Dawson v. Bank of Whitehaven (Chan. Div. 1877), 36 L. T. R. N. S. 310.
Martin v. Lincoln, 4 Lea (Tenn.) 289 (1880).
Creditors filed bills to enforce debts against real estate which had been paid for by the husband, but title conveyed to a third party. The wife insisted that she was entitled to the property under a parol trust, as conveyed to the third party for her benefit. The husband died pending the litigation. The wife then claimed dower, by an amended pleading, in the event she failed to establish the trust.— Held, that the trust could not be set up against creditors, not being in writing or registered; but that she was entitled to her dower, and was not estopped from asserting her right to it by having claimed and contended for the beneficial interest under the assumed parol trust. Martin v. Lincoln, 4 Lea (Tenn.) 289 (1880).
Lockett v. James, 8 Bush (Ky.) 28 (1871).
Creditor’s bill to subject to the payment of his debt, land conveyed by debtor and his wife to the defendant. The wife was not made a party to the proceeding. The court granted the relief sought, making no reservation in favor of the wife’s dower, the husband having died pending the action. On appeal, held, that the invalidity of the deed as a conveyance of the legal title having been judicially established, upon its avoidance by creditors, it was no longer effectual as between the widow and the grantee, as a bar to her right of dower, either as a conveyance or an estoppel. Lockett v. James, 8 Bush (Ky.) 28 (1871).
IX. Bescission of the Fraudulent Transfer.
Wheeler v. Kirtland, 23 N. J. Eq. 13 (1872).
Bill in equity to have a judgment declared a lien on land of a debtor’s wife on the ground that it was paid for out o'f the assets of the debtor’s firm.
The debtor’s wife purchased land from her father, §2,000 of the consideration being paid by the check of her husband’s firm, it being' intended as a gift to her. The check was returned to the firm, who credited the father with it, and bonds were subsequently bought for him but pledged for the firm’s benefit. The firm having failed, $20,000 was raised on the land and used in paying the firm’s debts, part being applied to the debt for which the father’s bonds were pledged. The father and wife did not know of the insolvency at the time of the gift.
The Chancellor, after hearing the proof, dismissed the bill, holding that where a man makes a gift to his wife, she being ignorant of his insolvency, and using it in the purchase of property or in business transactions, and afterwards fully repays it, there is no fraud or ground on which to create a trust in the profits or advanced value of the property. There is no privity or confidence; fraud might create a trust, but there is no fraud in the donee. Wheeler v. Kirtland, 23 N. J. Eq. 13 (1872).
Cramer v. Blood, 57 Barb. 155, 671.
Action by receiver of a judgment debtor appointed in supplementary proceedings to set aside conveyances, &c.
Prior to the recovery of judgment, upon which the supplementary proceedings were had, the defendant received the property of the debtor with intent to defraud his creditors, sold it, and delivered the proceeds of sale to the debtor or his wife as his agent. Subsequently defendant received a portion of such proceeds with like intent, upon an agreement to hand it over to the debtor and his wife for their use as they might want, but before recovery of judgment, defendant' had returned the money to the debtor, or paid it out to creditors by his direction, and had settled with him and received a release from all claims on the part of the debtor. It was sought to charge the defendant with liability for the value of the property so received and sold.
Held, that he was not liable. The defendant’s intent to defraud creditors was rendered harmless by his delivery of the proceeds to the debtor or his agent, or payment thereof to his creditors at his request. Creditors could not be injured by defendant’s possession of the property or by his sale of it, or his possession of the proceeds, since either could be reached by a creditor who was in a condition to seize the debtor’s property on execution or its proceeds under supplementary proceedings or creditor’s suit. Cramer v. Blood, 57 Barb. 155, 671.
To entitle a judgment creditor to attack a disposition made of the debtor’s property, he must be able to show that the disposition was such that something remains of it or its proceeds, which ought to be applied upon his judgment. Cramer v. Blood, 48 N. Y. 684 (no opinion reported); aff’g 57 Barb. 155, 671.

 Reversing 10 Weekly Dig. 266. Compare Popfinger v. Tutte, 49 Super. Ct. (J. & S.) 312.

 See a further decision in 8 Abb, Pr, N. S. 169.

 And see, as to necessity of proving claim, Matter of Burdick, 10 Daly, 49.

 Compare 16 Abb. Pr. 137.

 The reference is to 2 R. S. 88, § 34; same statute, 3 Id. 7 ed. p. 2299.

 Consult, in connection with this rule, Code Civ. Pro. § 786, providing for publication of orders giving notice to present claims in such actions.